MARTH v. CITY OF KINGFISHER *et al.*

No. 2119, Okla. T.   Opinion Filed November 16, 1908.

(98 Pac. 436.)

1.    **MUNICIPAL CORPORATIONS—Ordinances—Failure to Record—Effect.** Sections 418, 464, Wilson's Rev. & Ann. St. Okla. 1903, are merely directory, and failure of the city clerk to record upon his journal the proceedings of the city council had in passing an ordinance and to record the ordinance in the "Ordinance Book" does not invalidate such ordinance.

2.    **SAME—Powers of City—Fourth of July Celebration.** A city of the first-class has no power under the provisions of chapter 12, Wilson's Rev. & Ann. St. 1903, to engage in conducting or to conduct a Fourth of July celebration or to contract with others to conduct such celebration for it.

3.    **SAME—Officers and Agents—Ultra Vires Acts.** A municipal corporation is bound by the acts of its officers only when within the charter or scope of their powers. Acts outside of the powers of the corporation or of the officers appointed for it are void as respects the corporation, and such corporation is not liable therefor.

4.    **SAME—Governmental Powers—Failure to Exercise—Liability.** A municipal corporation is not liable for failure to exercise a governmental power, as for failure to enact an ordinance against horse' racing upon its streets, nor for failure to enforce such ordinance after it is enacted.

5.    **SAME—Defect in Streets—What Constitutes—Horse Race.** A horse race upon a street of a city is not a defect or. want of repair in the highway of the city or a dangerous condition of such highway for which a city is liable to a traveler upon such street who is struck by one of the horses in the race.

6.    **SAME—Racing in Streets—Liability of Persons Conducting Race.** The racing of five or six wild and unbroken horses upon the street of a city where a large crowd is gathered is a dangerous and illegal use of such street, for which a commercial club and its officers and agents at whose instance and under whose supervision such race is conducted are liable to a traveler upon such street who, without fault on his part, is struck and injured by one of the horses in the race.

7.   **PLEADING—Demurrer—Grounds—Misjoinder of Parties.** A misjoinder of parties is no ground for demurrer under our Code.

(Syllabus by the Court.)

*Error from District Court, Kingfisher County; C. F. Irwin, Judge.*

Action by Franz F. Marth against the City of Kingfisher and others. Judgment for defendants, and plaintiff brings error. Affirmed as to the City of Kingfisher, and reversed and remanded as to the other defendants.

This is an action for damages for personal injuries, brought originally in the district court of Kingfisher county by plaintiff in error, plaintiff in that court, against the city of Kingfisher, a municipal corporation, the Commercial Club of Kingfisher, a corporation, and David Weinberger, A. E. Bracken, Elmer Solomon, Harley Davis, and George H. Laing. The facts alleged in plaintiff's amended petition are that the city of Kingfisher is a city of the first class, and that the Kingfisher Commercial Club is a private corporation under the laws of the territory of Oklahoma, and that defendants Weinberger, Bracken, Solomon, Davis, and Laing were the duly authorized agents and representatives of said city and commercial club at the times and in the transactions complained of in plaintiff's petition. Plaintiff alleges that the principal object and purpose of said Commercial Club was to build up and encourage trade and commerce from the territory tributary to the city of Kingfisher; that shortly prior to the 4th day of July, 1905, the city of Kingfisher and said Commercial Club, through their representatives, officers, and agents, duly elected and appointed, determined to conduct and carry out a celebration on the national holiday on the 4th day of July, 1905; that the principal purpose of said celebration as determined upon by said defendants was to build up trade and commerce, and that the same was to be entered upon as a private undertaking and conducted for the benefit of said city; that some weeks prior to the 4th day of July, 1905, said city, through its duly elected and appointed officers and agents, duly convened according to law and said Commercial Club, through

its officers and agents duly appointed and commissioned for that purpose, agreed with each other to aid said celebration for such purposes, and appointed the persons named as defendants together with other persons unknown to plaintiff as the duly authorized agents and representatives of said city and Commercial Club to arrange and carry out the proposed celebration; that the city of Kingfisher thereupon, through its mayor and city council, passed all necessary ordinances, rules, and by-laws and regulations at a regular meeting of the council necessary and proper for carrying out said celebration, and showing the purpose for which the celebration was to be entered upon and conducted, but that for some reason unknown to plaintiff the city and its officers neglected and failed to enter in writing the proceedings had in reference to said matter by its city and mayor, and that such proceedings have at no time since been made a matter of record, for which reason plaintiff is unable to set out in detail such rules, by-laws, and regulations pertaining to the celebration; and further alleges that, in pursuance with the agreement between the city and the Commercial Club, people by means of advertisement were invited to attend said celebration in the city of Kingfisher on said day; that the principal business thoroughfare of said city is commonly known as Main street; that on the day of the celebration defendants, acting through their officers and agents, inclosed a portion of said street by stretching ropes across the same and across the streets and avenues that intersected the same, and that such arrangement of said street was made for the express object and purpose of conducting within the inclosure on said street a horse race; that the mayor and council of the city were present and saw all the preparations made, and knew the purpose and object of the ropes across said street and intersecting streets but failed to prevent same; that during the celebration on said day the defendant city and Commercial Club, through their committees, officers and agents, placed wild and half broken horses, five or six in number, upon the inclosed portion of said street in charge of small boys who were unable to

control the horses, and that in the meantime one of the ropes stretched across one of the intersecting streets had been torn down; and that plaintiff, coming over said intersecting street upon Main street, in company with his wife and children, in a two horse carriage just at the time said horses were being run down the street his carriage was struck by one of said horses and overturned, and he and his family thrown from the same upon the ground, by which fall plaintiff was bruised and injured in his back, knees, and head; that he had no knowledge that such horse race was in progress or that the same was contemplated, and that he was without fault or negligence on his part. On account of these injuries he asks judgment of the court for damages. To this amended petition all the defendants filed their separate demurrers, and the court sustained the same and rendered judgment dismissing the cause. The action of the court in sustaining the demurrers of defendants and rendering judgment dismissing the cause is the error assigned by plaintiff for reversal of this case.

*Noffsinger & Hinch,* for plaintiff in error.

*John T. Bradley, Jr.,* for defendant in error City of Kingfisher.

*F. L. Boynton,* for defendants in error Commercial Club, Bracken, Davis, and Laing.

HAYES, J. (after stating the facts as above). The propositions presented by this appeal may be best disposed of by considering separately the merits of the demurrers of the defendants. Counsel for the defendant city of Kingfisher contends that its demurrer should have been sustained by the court for the reason that it is disclosed by the petition that the ordinances and transactions of the city council by which it was agreed that such celebration should be held were never made matters of record as is required by law, and therefore such proceedings of the officers of the city of Kingfisher were void and the city was not liable for any acts of its officers or other persons acting thereunder; second, that defendant as a municipal corporation of Oklahoma Territory was

not authorized by law to contract for a Fourth of July celebration and to conduct a horse race for the purpose of entertaining the public; third, that a municipal corporation is liable only for the manner in which it discharges its ministerial duties, and that the manner of regulating and controlling the use of the streets was within the legislative, judicial, and discretionary powers of such corporation and not part of its ministerial duties, and that for the negligent exercise thereof in prohibiting or for failing to prohibit horse racing upon its streets it was not liable.

Section 418, Wilson's Rev. & Ann. St. Okla. 1903, provides "that the city clerks of the cities of the first class shall keep a journal in which shall be recorded all proceedings of the city council." And section 464 of the same statute provides that "the city clerk shall keep an 'Ordinance Book,' in which he shall enter at length, in a plain and distinct handwriting, every ordinance in force in said city at the time this act takes effect (unless said ordinances are already so recorded), and every ordinance hereafter enacted immediately after its passage, and he shall append thereto a note, stating the date of its passage, the page of the journal containing the record of the final vote on its passage, and also the name of the paper in which the ordinance was published and the date of such publication." The allegations of plaintiff's amended petition clearly disclose that no record was made by the city clerk of the proceedings of the city council in enacting the ordinances providing for said celebration, and that such ordinances were never recorded as required by statute; but the recording of an ordinance of a municipal corporation is not a prerequisite to the validity of any such ordinance unless it is made so by the charter of such corporation or the statute under which it is organized and acts. Where, however, it is provided that an ordinance shall not be valid or in force until recorded, then the recording of the same is essential to the validity of the ordinance. 1 Modern Law of Municipal Corporations, par. 518; *Crebs v. City of Lebanon* (C. C.) 98 Fed. 549; *Allen v. City of Davenport,* 107 Iowa, 90, 77 N. W.

53%. The statute of Oklahoma does not make it essential to the validity of an ordinance that it be recorded, and the requirements of the statute that the city clerk enter in longhand at length each ordinance enacted by the city council in a journal kept by him for that purpose is merely directory, and failure of the municipal authorities of the city of Kingfisher to comply with the requirements of this statute in the case at bar did not render void the ordinances passed by it relative to said celebration. Section 462, Wilson's Rev. & Ann. St. 1903, provides that:

"* * * And all ordinances shall, as soon as practicable after they are passed, be published in some newspaper printed within the city, or if no paper be published in said city, then in some paper having a general circulation therein; * * * and no ordinance having any object beyond the bare appropriation of money shall be in force until published as herein provided."

Under the provisions of this section of the statute, we think that the publication of the ordinance enacted by the city of Kingfisher relative to said celebration at which plaintiff was injured was essential to the validity of said ordinance, and, unless published, would not in any manner bind the city. *National Bank of Commerce v. Granada,* 54 Fed. 1005, 4 C. C. A. 212. No specific allegation is made in plaintiff's amended petition that such ordinances were ever published, but there appears a general allegation that defendant city, through its officers and agents, did all things necessary for the purpose of entering upon and carrying out said celebration, and, since no objection has been made by defendant in error to the general terms of such allegation, it may be taken as sufficient to include all the necessary averments relative to the legality of the procedure of the city council, except wherein the petition alleges facts showing that the law had not been fully complied with. The publication of the ordinances as required by the statute was essential to their validity, but the record of the same by the city clerk upon the ordinance book which appears never to have been made was not a prerequisite to their validity, and, while the record of the same might have become very valuable

in the trial of this case upon the facts as a matter of evidence, the same was not necessary to plaintiff's right of recovery, if he is entitled to recover upon the other facts alleged in his petition.

A municipal corporation has only such power to enact ordinances as is granted it by its charter or by the provisions of the general law under which it is created. It has no inherent powers. Mr. Dillon, in his work on Municipal Corporations (volume 1, p. 145 [4th Ed.]) says:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable. * * * Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby or some legislative act applicable thereto. All acts beyond the scope of the powers granted are void."

A municipal corporation is without power, unless expressly granted to it, to make a contract to provide for celebrating the Fourth of July, and any such contract is void, even against one who has complied therewith and seeks to recover thereon. 1 Dillon's Municipal Corporations (4th Ed.) p. 221. To determine whether the city of Kingfisher had power to contract by ordinance with the Commercial Club to provide for a Fourth of July celebration at the time alleged in plaintiff's petition, we must determine whether there had been any grant of authority by the Legislature of the territory of Oklahoma to the city of Kingfisher to pass such ordinance. The alleged cause of this action occurred and this case was tried in the trial court prior to the admission of the state, and the rights of the parties are therefore unaffected by any provision of the Constitution or any law enacted since the admission of the state. Kingfisher is a city of the first class under chapter 12 of Wilson's Revised and Annotated Statutes of Oklahoma of 1903, but we fail to find among the enumerated powers specifically granted by the provisions of that chapter any authority given

to cities of the first class to provide by ordinance or contract for a Fourth of July celebration or for the city itself to conduct such celebration as it is alleged was attempted to be done by the city of Kingfisher. Section 24 (section 369 of Wilson's Rev. & Ann. St. 1903) of said chapter, in which the general powers and duties of the mayor and council of cities of the first class are enumerated, reads as follows:

"The mayor and council shall have the care, management and control of the city and its finances, and shall have power to enact, ordain, alter, modify, or repeal any and all ordinances not repugnant to the laws of the United States and the Organic Act and laws of this Territory, as they shall deem expedient, and for the good government of the city, the preservation of the peace and good order, the suppression of vice and immorality, and the benefit of trade and commerce, and the health of the inhabitants thereof, and such ordinances, rules and regulations as may be necessary to carry such power into effect. They shall divide the city into not less than four wards and establish the boundaries thereof. The council shall have no power to allow or pay any debt or obligation of any character arising from any act done, or thing bought by any provisional government, formerly existing, where the cities now are, nor of any debt, to any person made therewith under any guise whatsoever, unless authorized so to do by a majority of the legal voters of such city."

No provision of this section authorizes by express terms cities of the first class to engage in the private undertaking of conducting a public celebration or to contract with others to conduct such celebration for the entertainment of the public, nor do we think it can be contended that such authority is included in any of the general grants of power contained in this section. One of the settled rules governing construction of statutes which grant powers to municipal corporations, where there is a fair, reasonable doubt concerning the existence of any given power, is that the same shall be resolved by the court against the corporation and the power denied. Section 24, *supra,* grants power to the councils of cities of the first class to enact ordinances for the several purposes therein speci-

Vol. 22—39

fied, one of which purposes is for "the benefit of trade and commerce," but the nature and extent of the power granted by this clause of the section we think must be determined by considering this clause in connection with all the other clauses of the section. It will be noticed that the other purposes for which the city council is granted power to enact ordinances enumerated in said section are "to prevent vice and immorality," "to preserve public peace and good order," "to prevent and quell riots, disturbances and disorderly assemblies," and "the protection of the health of the inhabitants." All of said purposes enumerated in the section for which the council is given power to enact ordinances pertain to police regulation and to the governmental functions and powers of the city, and we do not think it was the intention of the Legislature by providing that the city council should be authorized to enact ordinances for the benefit of trade and commerce to thereby authorize such cities to engage in private undertakings for the purpose of promoting the interests of the trade and commerce of the city, but only intended to authorize it to adopt such police regulation as the city might deem necessary for the benefit of its trade and commerce. To construe said clauses as granting to the city authority to engage in, or, as alleged in this case, to contract for the conducting of a Fourth of July celebration or any other private enterprise for the purpose of attracting trade to the city, would be to hold that any such city would have power to contract for advertisements in newspapers with a view of attracting trade to its city, or to purchase and own a printing plant, and to operate the same in circulating advertisements with a view of promoting the interests of the trade and commerce of the city, or to employ agents and send them out to solicit trade for the city, or to engage in almost an innumerable number of other private enterprises that would be equally beneficial to the trade and commerce of a city, and thereby incur great expense for the same to the city. We do not believe that any such extensive grant of power was intended to be granted by the Legislature, and, being

impressed with such doubt when we read said clause in connection with the other clauses of the section, we believe, observing the rule of construction above referred to, the doubt should be resolved against the city, and it should be held that the city had no such power. The actions, therefore, of the city council and its officers in enacting ordinances and making contracts with the Commercial Club providing for the public celebration and in assisting to conduct the same were *ultra vires* and void.

The officers and agents of the city of Kingfisher were acting entirely outside the scope of their duty in passing ordinances and making the contract relative to the celebration and did not bind the city, nor is the city of Kingfisher answerable for the torts of such officers and agents, since the wrong complained of is acts done out of the scope of their lawful powers and duties. *Love v City of Raleigh,* 116 N. C. 296, 21 S. E. 503, 28 L. R. A. 192; 20 Am. & Eng. Ency. of Law, 1201; *Mitchell v. City of Clinton,* 99 Mo. 153, 12 S. W. 793. In 2 Dillon's Municipal Corporations (4th Ed.) par. 968, Judge Dillon says:

"If the act complained of necessarily lies wholly outside of the general or special powers of the corporation as conferred in its charter or by statute, the corporation can in no event be liable to an action for damages, whether it directly commanded the performance of the act or whether it be done by its officers without its express command; for a corporation cannot, of course, be impliedly liable to a greater extent than it could make itself by express corporate vote or action."

This general rule was followed by the Supreme Court of the territory of Oklahoma in *Wallace v. Town of Norman,* 9 Okla. 339, 60 Pac. 108, 48 L. R. A. 620.

Our attention has been called by plaintiff to the case of *Little, Adm'r, v. City of Madison,* 42 Wis. 643, 24 Am. Rep. 435, as holding the contrary to this doctrine. The alleged facts which the court held in that case constituted a cause of action were that the officers of the defendant city had knowingly, negligently, and carelessly allowed one of the streets to become incumbered and obstructed by an exhibition of wild animals upon the same by grant-

ing to the owners of the wild animals a license to exhibit the same upon the street, and plaintiff's team was frightened by said animals and ran away and thereby injured plaintiff's wife; but the same court, in commenting upon this case in *Schultz v. City of Milwaukee,* 49 Wis. 260, 5 N. W. 342, 35 Am. Rep. 779, limits very much the expressions of the court in *Little v. City of Madison, supra,* in the following language:

"Although reference is made in the opinion by Mr. Justice Cole to the fact that it was alleged in the complaint that the agents of the city knowingly and carelessly allowed one of its principal streets to become obstructed by the exhibition, *yet the precise ground of the judgment in that case is that if a municipal corporation, in the attempted exercise of any power conferred upon it by law, as to license shows, amusements, and the like, exceeds its authority, and licenses the placing of a public nuisance in a street, or the unlawful and dangerous use of a street for any purpose, and an injury results therefrom, without negligence on the part of the person injured, the municipality is liable to respond in damages for such injury.* The case goes no further, and could not without violating well settled principles of law." (The italics are ours.)

In *Speir v. City of Brooklyn,* 139 N. Y. 6, 34 N. E. 727, 21 L. R. A. 641, 36 Am. St. Rep. 664, the court clearly distinguishes the class of *ultra vires* acts of the offices of a municipal corporation for which the corporation is liable from that class of *ultra vires* acts for which it is not liable. Mr. Chief Justice Andrews, delivering the opinion of the court, says:

"The ordinances passed were not *ultra vires* in the sense that it was not within the power or authority of the corporation to act in reference to the subject under any circumstances. See Dillon on Mun. Corp. par. 963. It is the settled doctrine of the courts that a municipality is not bound merely by the assent of its executive officers to wrongful acts of third persons, nor could the mayor bind the city by a permit for the granting of which he had no color of authority from the common council, and which was not within the general scope of his authority. *Thayer v. City of Boston,* 19 Pick. (Mass.) 511, 31 Am. Dec. 157. If the permit was in fact authorized by the ordinance, the city would, as we conceive,

be liable, although the particular act authorized was wrongful. For a mistake in the exercise of its powers, or by acting in excess of its powers, upon a subject within its jurisdiction, whereby third persons sustain an injury, there seems to be no reason in justice which should deny the injured party reparation."

This seems to be the first case holding that a city is liable for an injury sustained by the discharge of dangerous fireworks upon its streets, and is one of the very few cases so holding, and we do not here refer to it for the purpose of commenting upon the conclusion therein reached by the court, but for the purpose of suggesting that the reasoning of the court above quoted in no way militates against the conclusions of this court that the acts of the city council of Kingfisher and its other officers in enacting ordinances and entering into an agreement for the conducting of the celebration, and of their participating therein in no way rendered the city liable in this case, for those acts were of that class referred to by the court above as being in no sense within the power or authority of the corporation to act in reference to the subject under any circumstances. We are therefore of the opinion that no liability was created against the city of Kingfisher by the act of its officers in enacting ordinances providing for the celebration or in participating therein; but it is contended by plaintiff that the city is liable under its duty to keep its streets in a state of repair and in reasonably safe condition for public travel. The rule that a municipal corporation is bound by the law to exercise reasonable and ordinary care and diligence to keep its streets and sidewalks in reasonably safe condition for public travel, and that, for failure to do so, it is liable for injuries sustained by reason of such negligence, was frequently followed and recognized as the law of the territory by the Supreme Court of the territory of Oklahoma. *Moses Pitman v. City of El Reno,* 2 Okla. 414, 37 Pac. 851; *City of Oklahoma City v. John T. Welsh,* 3 Okla. 288, 41 Pac. 598; *City of Guthrie v. Thistle,* 5 Okla. 517, 49 Pac. 1003; *City of Stillwater v. Swisher,* 16 Okla. 585, 85 Pac. 1110.

As to what constitutes a defect, insufficiency, or want of repair

in a street or a dangerous condition therein, for ·which a ·municipality is liable for injuries resulting therefrom, is defined in 15 Am. & Eng. Ency. of Law, p. 459, in the following language:

"The defect, insufficiency, or want of repair for which a municipality is liable is either inert matter incumbering the highway, or a structural defect therein, and an illegal use of the highway by men, animals, vehicles, engines, or other objects, while movable and actually being moved by human will or direction, and neither fixed to nor stationary in one position within the highway, does not render the municipality liable."

This rule we believe is supported by the weight of authorities. *Dudley v. City of Flemingsburg,* 115 Ky. 5, 72 S. W. 327, 60 L. R. A. 575, 103 Am. St. Rep. 253; *Barber and Wife v. City of Roxbury,* 11 Allen (Mass.) 318; *Faulkner v. City of Aurora,* 85 Ind. 130, 44 Am. Rep. 1; *City of Lafayette v. Timberlake et al.,* 88 Ind. 330; *Hutchinson v. Town of Concord,* 41 Vt. 271, 98 Am. Dec. 584; *Burford v. Grand Rapids,* 53 Mich. 98, 18 N. W. 571, 51 Am. Rep. 105; *Ball v. Town of Woodbine et al.,* 61 Iowa, 83, 15 N. W. 846, 47 Am. Rep. 805; *Davis v. City of Bangor,* 42 Me. 522; *Jones v. City of Williamsburg,* 97 Va. 722, 34 S. E. 883, 47 L. R. A. 294. In the last case cited the action was for injuries received by the plaintiff caused by a bicycle being negligently propelled against him by its rider. A demurrer to plaintiff's petition was sustained by the court, and Mr. Justice Riley, who delivered the opinion of the court, clearly states the reasoning upon which this rule has been founded by the courts in the following language:

"It is obvious therefore, that, if the city be liable in damages for the injury, its liability results not from a defective condition of the sidewalks, but from the improper and dangerous use that was being made of it by the bicyclist. A municipal corporation has a dual character, the one public and the other private, and exercises correspondingly twofold functions, the one governmental and legislative and the other private and ministerial. In its public character it acts as an agency of the state to enable it the better to govern that portion of its people residing within the municipality, and to this end there is granted to or imposed upon

it by the charter of its creation powers and duties to be exercised and performed exclusively for public, governmental purposes. These powers are legislative and discretionary, and the municipality is exempt from liability for an injury resulting from the failure to exercise them or from their improper or negligent exercise. In its corporate and private character there is granted unto it privileges and powers to be exercised for its private advantage, which are for public purposes in no other sense than that the public derives a common benefit from the proper discharge of the duties imposed or assumed in consideration of the privileges and powers conferred. This latter class of powers and duties are not discretionary, but ministerial and absolute; and for an injury resulting from negligence in their exercise or performance the municipality is liable in a civil action for damages in the same manner as an individual or private corporation."

In *Dudley v. City of Flemingsburg, supra,* the court says:

"There are two general principles underlying the administration of government of municipal corporations: The one is that a municipal corporation, in the preservation of peace, maintenance of good order, and the enforcement of the laws for the safety of the public, possesses governmental functions, and represents the state. The other is where the municipal corporation exercises those powers and privileges conferred for private, local, or merely corporate purposes, peculiarly for the benefit of the corporation. Under the former the city is not liable for the malfeasance, misfeasance, or nonfeasance of its officers. Under the latter it is."

The court then holds that the defendant city was not liable for injuries to one with whom a sled had collided for failure to prevent coasting on its streets, notwithstanding the authorities of such city had knowledge of such use of the streets and neglected and refused to prevent such illegal use thereof. The distinction between the liability of a municipal corporation for defects or want of repair of its highway and for injuries received from causes similar to the cause of the injury in the case at bar is clearly drawn by the Supreme Court of Massachusetts in *Barber and Wife v. City of Roxbury,* 11 Allen (Mass.) 318. In that case plaintiff's wife sustained her injuries from a rope stretched across the street of the defendant city which was being gradually raised by

persons off the street at the time plaintiff came in contact therewith, and was injured. The court, in discussing what constitutes such a defect or want of repair in the streets of a city as to render such city liable for an injury occasioned thereby, uses the following language:

"Anything in the state or condition of the highway which renders it unsafe or inconvenient for ordinary travel is a defect or want of repair. It may be a hole or trench occasioned by imperfect laying out and working of the roadbed or by travel, by the act of public officers or private individuals or corporations, or by a storm or freshet or other natural cause. It may consist of a stone or log or other obstacle left on the surface, or of a post standing within a general course and direction of travel over the highway, or of a barrier fixed or stretched across the way, though not touching the soil of the highway. It may perhaps include trees or timber moved by wind or flood. The defect need not have been in exactly the same condition during the time necessary to affect the town or city with notice, if it has continued dangerous during that time."

And after citing authorities, the learned court says:

"But we are not aware of any precedent for holding an illegal use of the highway by men, animals, vehicles, engines, or any other object, while movable and actually being moved by human will and direction, and neither fixed to, nor resting on, nor remaining in one position within the traveled part of the highway, to be a defect or want of repair for which the city or town is liable."

*Wheeler v. City of Ft. Dodge,* 131 Iowa, 566, 108 N. W. 1057, 9 L. R. A. (N. S.) 146, has been cited by plaintiff as a case arising upon a state of facts very similar to that in the case at bar, and therefore peculiarly applicable. The injuries for which damages were sought in that case were sustained by plaintiff at a Fourth of July celebration in the city of Ft. Dodge, begun and conducted by the council and other officers of the city and the Commercial Club of the city, very much in the same manner as the celebration was conducted in the case at bar. The injuries were directly the result of a performance at said celebration called "a slide for life." A wire upon which the performance

was executed was stretched downward and outward in a diagonal course across one of the streets of the city, and was attached to the courthouse at one end and to a telephone pole at the other. The slide was made by a young woman apparently hanging by her teeth to a rope attached to a pulley that rolled upon the wire, but in fact supported by a belt or harness of some kind placed about her body, and concealed by her clothing. While thus sliding down the wire, the harness about her body broke, and she fell some 75 feet to the sidewalk, striking and injuring plaintiff. The court held that the city was liable to plaintiff for his injury; but a .careful reading of the opinion discloses that the court bases the liability of the city upon the ground that the wire stretched across the street was the proximate cause of the injury, and that it was a defective condition in the street rendering it unsafe for public travel, for which the city is liable under the general rule of law hereinbefore mentioned, and the fact that the city had permitted such performance, although without authority was such negligence in permitting its streets to become obstructed and in a dangerous condition for travel as to render it liable. It will thus be seen that the defective condition of the street for which the city was held to be liable in that case was not one resulting from a moving body controlled by a person, but from a fixed and stationary object. We are not unaware, however, that there are cases which appear to hold contrary to the general rule we have here followed. *Stanley v. City of Davenport,* 54 Iowa, 463, 2 N. W. 1064, 6. N. W. 706, 37 Am. Rep. 216, is one of such cases, but, in so far as such cases hold contrary to the general rule quoted, *supra,* from the Am. & Eng. Ency. of Law, we decline to follow them.

Nor does the fact that the council of the city of Kingfisher had power to prevent and punish all horse racing, fast driving or riding on its streets render defendant city liable for the injuries in the case at bar, for the reason that such power granted to the city by the Legislature was a legislative and discretionary power for

the exercise of which or failure to exercise which the city was not liable. It is a general rule that a municipal corporation is not liable in damages for failure to enact ordinances with reference to subjects within its jurisdiction or for failure to enforce such ordinances when enacted. 1 Beach on Public Corporations, par. 632; *City of Lafayette v. Timberlake et al., supra; Burford v. City of Grand Rapids, supra; Amperse v. Kalamazoo,* 75 Mich. 228, 42 N. W. 821, 13 Am. St. Rep. 432; *Kiley v. Kansas City,* 87 Mo. 103, 56 Am. Rep. 443; *McCarthy v. Village. of Munising,* 136 Mich. 622, 99 N. W. 865.

In *Jones v. City of Williamsburg, supra,* where the damages resulted from a collision by the plaintiff with a bicycle being improperly ridden upon the sidewalk of plaintiff, and where the city had failed to pass an ordinance forbidding, the court, discussing the grounds of the alleged liability, says:

"The condition of the street or walk, however, is one thing, and the manner of its use by the public is quite a different thing. For its safe condition the city is responsible, but for its unlawful and improper use it is not. * * * The government does not guarantee its citizens against all the casualties incident to humanity, and cannot be called upon to compensate by way of damages its inability to protect against such accidents and misfortunes. The failure to pass a needful law or ordinance is plainly the omission by the state or city as an agency thereof of a public, governmental duty, for which no action lies."

The Supreme Court of Iowa in *Ball v. Town of Woodbine et al., supra,* holds that where fireworks are discharged within the limits of an incorporated town or village in violation of the ordinances of the town, whereby one is injured, the town is not liable for such injury, notwithstanding the town council and officers of the town actually participated in the discharge of the fireworks and the town by its officers makes no attempt to stop the unlawful proceeding. The same rule is announced by the Supreme Court of Indiana in *Faulkner v. City of Aurora, supra,* where the court held a city not liable for bodily injuries received by a traveler upon its streets as result of coasting thereon for sport by per-

sons, although such city had an ordinance prohibiting such sport upon its streets and such sport was carried on by crowds publicly in the presence of the officers and police of the city to the obvious danger of persons using the streets.

The demurrers of the other defendants set up all the statutory grounds of demurrer, but we have carefully examined the same and find them without merit. The racing of wild and half broken horses, some five or six in number, upon the streets of a city, where great crowds of people are assembled and where such horses are placed in charge of small boys who are unable to control them, is such a dangerous and illegal use of the streets as would render the person conducting such race liable to a traveler upon such streets who, without fault on his part, receives injuries from one of the horses running against or over him. The provisions of the charter of the Commercial Club are not set out in the petition, but it is alleged that the purposes and objects of such corporation were and are "to build up and encourage trade, business and commerce and to draw trade from the territory tributary to said city." The officers and agents of the defendant Commercial Club were acting within the scope of the powers of the Commercial Club when they were conducting the public celebration for the purpose of attracting people to the city, thereby encouraging them to trade with the merchants of the city, and such Commercial Club is liable for such tort of its officers and agents committed while in the discharge of such duty or work, and such officers and agents are personally liable for their own acts.

It has been insisted in the brief of defendants in error that there is a misjoinder of parties defendant, for which their demurrers should be sustained, but under the repeated rulings of the Supreme Court of the territory of Oklahoma it is unnecessary for us to examine and determine whether there is a misjoinder of parties defendant, for the reason that, if it should be found there is, the pleadings in this case do not present the question for our consideration, for a demurrer will not lie for a misjoinder of parties.

*Stiles v. City of Guthrie,* 3 Okla. 26, 41 Pac. 383; *Weber v. Dillon,* 7 Okla. 568, 54 Pac. 894.

The judgment of the trial court as to defendant city of Kingfisher is affirmed, but as to all the other defendants 'the cause is reversed and remanded.

Williams, C. J., and Turner and Dunn, JJ., concur; Kane, J., disqualified, not sitting.